## Warfield Natural Gas Co. v. Ward et al.

(Decided June 6, 1934.)

KIRK & WELLS for appellant.

WHEELER & WHEELER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

S. W. Ward, Sr., and his former wife, Mary Margaret Ward, were the joint owners of a tract of land in Johnson county. Mary Margaret Ward died intestate several years ago, and her undivided one-half interest in the land passed to her children, subject to the curtesy right of their father, S. W. Ward, Sr. Under an agreement with S. W. Ward, Sr., the Warfield Natural Gas Company constructed a pipe line through the land. Thereafter S. W. Ward, Sr., conveyed his entire interest in the land to a trustee for the benefit of his and Mary Margaret Ward's children.

Thereafter the children brought this suit against the Warfield Natural Gas Company to recover damages

resulting from the construction of the pipe line and also damages for the destruction of timber and fencing alleged to have been caused by the negligent building of a fire on the right of way. The jury fixed the fire damage at $626 and the pipe line construction damage at $159 which was credited in the judgment by $79.50, representing S. W. Ward, Sr.'s, one-half interest in the property, and by the further sum of $10.62, being his life interest in one-half of the property. The Warfield Natural Gas Company appeals.

According to several witnesses for appellees, Coy Cantrill, appellant's pipe line walker, was seen on the right of way the day the fire occurred with a fire built up and a rod of iron in the fire, and he said that he was going to test the line, that there was a leak in the line and he was going to stop the leak. Afterward the fire spread down the hill both ways, burning the timber and the fencing. Others saw Cantrill on the same occasion walking a few feet from the fire and punching a bar of steel in the ground. There was also evidence to the effect that on the same occasion Cantrill said that he had let the fire out, and told some men that he would give them time and half if they would stop the fire. He also said that he was putting on a fire test, and was going back to see about it, but the fire had gotten out and he was going to notify the company. On the other hand, Coy Cantrill testified that he did not have a fire on the land at any time and was not in that section on the day of the fire. There was also filed with his evidence his original expense statement showing he was 16 miles distant from the place of the fire. In addition to this, Bruce Cantrill and B. W. Manns testified that they were out possum hunting with Ray Smith and let the fire out. Other witnesses testified that they saw the fire burning before it reached the pipe line. Coy Cantrill also testified that in performing his duties as pipe line walker he carried no iron rod. To fire test a line, you would take a cold rod, job a hole in the ground, and put a match in it. Other witnesses experienced in pipe line work testified that no fire was required in testing, that they did not use a hot rod because it might ignite the gas, but used a cold bar, and the pipe line walker does not test the line. If they should find a leak, they would drop a match in the hole.

It is clear from the foregoing resume that the evi-

dence that Cantrill had built the fire was sufficient to make a question for the jury, but it is insisted that appellant was entitled to a peremptory instruction on the ground that there was no showing that Cantrill was acting within the scope of his employment, but that it was shown by uncontradicted evidence that no fire was necessary for a pipe test, and that Cantrill was not authorized to make such test. This is not a case where the servant steps aside from his master's business and does an act not connected with the business. If the witnesses for appellees are to be believed, and that was a question for the jury, Coy Cantrill, the pipe line walker, was on the right of way, equipped with tools for testing the pipe line, and in connection with the work built the fire, placed the iron rod in the fire, and announced that he was going to make a test. In the performance of this work he was not acting for himself, but was acting in the furtherance of his master's business. In most cases where the master has been held liable for the negligent or tortious act of the servant, the servant acted not only without express authority to do the wrong, but in violation of his duty to the master. In general it is sufficient to make the master responsible that he gave to the servant an authority, or made it his duty to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment. In such case the master will be deemed to have consented to, and have authorized, the act of the servant, and he will not be excused from liability on the ground that the servant, in carrying on the work, abused his authority or adopted a method that proved hurtful to others. Ben Humpich Sand Co. v. Moore et al., 253 Ky. 667, 69 S. W. (2d) 996. In view of this rule, and the evidence bearing on the question, we are constrained to hold that it was for the jury to say whether or not Cantrill, in building the fire, was acting within the scope of his employment.

The further point is made that appellant was entitled to a peremptory instruction on the ground that there was no evidence that the fire was negligently kindled or negligently managed. In the very nature of things the question of negligence is to be determined from the circumstances. The fire was built out in the open, and not on property which appellant owned, but on property in which it had at most a mere easement.

Not only was there evidence that appellant's agent stated that he let the fire out and that he left the fire and returned to the pipe line, but there was further evidence that the ground was covered with leaves and dry underbrush and that the fire was built close enough to catch the leaves and underbrush and cause the fire to spread. These circumstances, we think, were sufficient to authorize the inference that appellant's agent did not exercise due care in kindling the fire or in managing the fire after it was kindled, and therefore to make a question for the jury.

Another insistence is that appellees are not entitled to recover damages growing out of the construction of the pipe line for the reason that the pipe line was constructed under an agreement with their father, S. W. Ward, Sr., who, at the time, owned not only an undivided one half interest in the land, but a life estate in the other half. In support of this position it is argued that there was no proof that the taking for pipe line purposes was permanent, and that the father as life tenant of the half owned by appellees had the right to grant an easement therein. No case of mere license is presented, but the case is one where the land itself has been actually taken, and the presumption is that the taking is permanent. In view of this situation, we are of the opinion that appellees, who own an undivided one-half interest in the remainder, may recover damages for the taking in proportion to their interest as fixed by the judgment.

The court did not err in not submitting the question of estoppel based on the ground that with knowledge appellees stood by and permitted the construction of the pipe line without objection. While their conduct may have estopped them from having the pipe line removed, it was not such as to estop them from claiming compensation for the taking of their land.

Lastly it is claimed that the court erred in refusing to permit appellant's agent, who procured the right of way, to testify that he did not know of anybody having an interest in the property except S. W. Ward, Sr., and that S. W. Ward, Sr., advised him at the time that he was the owner of the land. We find no merit in this contention. One cannot acquire an interest in the land of another by mere contract with one who appears or represents himself to be the true owner.

On the whole we find no error in the record prejudicial to appellant's substantial rights.

Judgment affirmed.